# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THEODORE BEASLEY, #R72028, <br><br> Plaintiff, <br><br> vs. <br><br> LARRY HICKS, KENNEDY HAMILTON, C/O RIDDER, NURSE TERRY, and NURSE DUANE, <br><br> Defendants. | Case No. 18-cv-01193-MJR |

## MEMORANDUM & ORDER

**REAGAN, Chief District Judge:**

Plaintiff Theodore Beasley, an inmate who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"),[1] brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights at Shawnee Correctional Center ("Shawnee"). (Doc. 1). According to the Complaint, Plaintiff was attacked by his cellmate and three officers on February 4, 2018. (Doc. 1, 1-1). He was also denied medical treatment for his injuries by two nurses. *Id*. Plaintiff claims that the defendants violated state regulations and criminal laws, as well as his right to be free from cruel and unusual punishment under the Eighth Amendment. *Id*. He seeks declaratory judgment, monetary damages, and criminal prosecution of the defendants. (Doc. 1, p. 9).

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

---

[1] Plaintiff was housed at Shawnee Correctional Center on June 4, 2018, the date he filed his Complaint. (Doc. 1, p. 2). Less than ten days later on June 13, 2018, he notified the Court of a change in his address to Pinckneyville Correctional Center. (Doc. 6).

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives screening under this standard.

## The Complaint

According to the Complaint, Plaintiff was attacked by his cellmate at Shawnee on February 4, 2018, after a correctional officer told all of the inmates in his segregation wing that he was a "child molester." (Doc. 1, pp. 5-8; Doc. 1-1, pp. 1-9). This was allegedly untrue, but the officer's statement caused inmates and officers alike to attack Plaintiff. *Id*. In the process, Plaintiff sustained severe injuries and was denied medical treatment for them. *Id*.

The attack was unprovoked by Plaintiff. On the date of the incident, he asked to speak with a nurse who was making rounds in Shawnee's segregation unit. (Doc. 1-1, p. 2). An officer who was escorting the nurse told Plaintiff to "go lay down" because he would not be "getting anything." *Id*. Plaintiff asked to speak with a sergeant or a lieutenant instead. *Id*.

Sergeant Hicks soon appeared at Plaintiff's cell door and denied his request to speak with the nurse. (Doc. 1-1, p. 2). When Plaintiff requested permission to speak with a lieutenant, the sergeant confiscated his prisoner identification card and left the cell. *Id*. Sergeant Hicks returned moments later and told Plaintiff's cellmate, Inmate Michael Swift, that Plaintiff was incarcerated for "rap[ ]ing babies." *Id*. The sergeant added that Inmate Swift should "take care of that." *Id*. At the time of making these statements, Sergeant Hicks was aware that Inmate Swift was affiliated with a gang and awaiting a transfer to a maximum security prison because he repeatedly attacked other inmates. *Id*. As Sergeant Hicks walked away from the cell, he loudly announced that Plaintiff is a child molester. *Id*. Although untrue, the statement prompted all 45 men in segregation to begin screaming and yelling at Inmate Swift, encouraging him to beat, rape, and kill Plaintiff. (Doc. 1-1, pp. 2-3).

Plaintiff assured Inmate Swift that he was not a convicted child sex offender, and he had court documents to prove it. (Doc. 1-1, p. 2). Inmate Swift asked to see the paperwork, but Plaintiff explained that the papers were not in his immediate possession. (Doc. 1-1, p. 3). Inmate Swift told Plaintiff that he had "3 seconds to walk" or face attack. *Id*. When Plaintiff turned to call for help from an officer, Inmate Swift punched Plaintiff in the back of the head. *Id*. Fearing for his life, Plaintiff placed Inmate Swift in a bear hug and bit him in the face and body. *Id*. At the same time, he called for help. *Id*.

Plaintiff could hear Sergeant Hicks laughing outside of the cell. (Doc. 1-1, p. 3). The officer told Plaintiff to let go of Inmate Swift. *Id*. Meanwhile, Inmate Swift asked the officer for "5 more minutes" with Plaintiff. *Id*. When the officer assured Plaintiff that he was safe from further assault by Inmate Swift, Plaintiff ran to the chuckhole door and allowed Sergeant Hicks to handcuff him and remove him from the cell. *Id*.

The officer escorted Plaintiff to the front of the wing, where he began beating Plaintiff. (Doc. 1-1, pp. 3-4). The officer elbowed Plaintiff and punched him repeatedly in his head and face. *Id*. Plaintiff fell to the floor. (Doc. 1-1, p. 4). As he attempted to shield himself from additional blows, he felt Sergeant Hicks' boot on his face. *Id*. The sergeant dragged Plaintiff to a holding cage in the lobby and left him there for the night. *Id*.

Nurse Terry appeared at the cage and informed Plaintiff that he would be taking a blood sample for an HIV test. (Doc. 1-1, p. 4). Plaintiff explained that he feared for his immediate safety and his life because he had just been beaten by Inmate Swift and Sergeant Hicks. *Id*. He requested medical treatment for his injuries. *Id*. At the time, Plaintiff's face and nose were bleeding, cut, and badly injured. *Id*. His eyes were swollen shut. *Id*. His wrists were swollen, and his hands were numb from the tight cuffs. *Id*. Nurse Terry and Lieutenant Hamilton escorted Plaintiff to a sink, where they rinsed the blood from his face with water. *Id*.

As Plaintiff leaned over the sink, he became dizzy, fainted, and fell to the floor. (Doc. 1-1, p. 5). When Plaintiff regained consciousness, Lieutenant Hamilton was dragging him—feet overhead—back to the cage. *Id*. Nurse Terry stood and watched, before informing Plaintiff that he would be seen later in the health care unit ("HCU"). *Id*.

After Nurse Terry left the area, Lieutenant Hamilton called C/O Ridder for assistance. (Doc. 1-1, p. 5). The lieutenant asked Ridder to retrieve a suicide smock for Plaintiff. *Id*. When Ridder returned with the smock, Hamilton ordered Plaintiff to face the wall. *Id*. As he did so, Plaintiff was attacked from behind by Hamilton and Ridder. *Id*. He sustained more than ten blows to the head and face. *Id*. When Plaintiff called for help, Hamilton and Ridder stopped and forced the suicide smock over his head before marching him through the segregation unit to the control room. (Doc. 1-1, p. 6). Once there, they punched Plaintiff in the face, stomach, and

thighs. *Id*. As they did so, Plaintiff called for help. *Id*. Hamilton and Ridder then escorted Plaintiff to the HCU. *Id*. On the way, they beat him, struck him in the face, and stomped on his bare feet with their boot heels. *Id*. By the time they reached the HCU, Plaintiff's face was allegedly "unrecognizable." (Doc. 1-1, p. 7). It was badly swollen and bleeding. *Id*. Plaintiff was also crying. *Id*.

Plaintiff met with Nurse Terry and Nurse Duane in the HCU. (Doc. 1-1, p. 7). After describing the attack by another inmate and multiple officers, Nurse Duane laughed and said, "[S]ounds like good cardio to me." *Id*. When Plaintiff told Nurse Terry that he feared the guards would kill him, the nurse said, "I don't think they are going to do that." *Id*. Instead of treating Plaintiff's injuries, Nurse Terry drew blood from both arms and then sent him to a segregation cell, where Hamilton yanked the suicide smock off of Plaintiff and warned him not to "snitch." *Id*.

The next day, Plaintiff was interviewed by two internal affairs officers (Lieutenant Pickford and C/O Banks). (Doc. 1-1, p. 8). The officers prepared a single report describing all of the assaults that occurred the day before, and Plaintiff signed it. *Id*. He was then provided with medical treatment for the first time. *Id*. The nurses in the HCU were immediately concerned about his injuries. *Id*. They summoned Doctor David to examine and treat Plaintiff. *Id*. He was admitted to the HCU and remained there for a week. *Id*. During this time, Doctor David ordered x-rays of Plaintiff's head and back and examined him regularly. *Id*. He was eventually released from the HCU to an individual segregation unit. *Id*. Plaintiff now claims that the defendants' conduct violated state regulations, criminal laws, and the Eighth Amendment.

**Discussion**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following counts:

    **Count 1** - Eighth Amendment claim against Hicks for encouraging inmates to attack Plaintiff for being a "child molester" and then failing to timely intervene to prevent the attack by Inmate Swift on February 4, 2018.

    **Count 2 -** Eighth Amendment claim against Hicks for using excessive force against Plaintiff on February 4, 2018.

    **Count 3 -** Eighth Amendment claim against Hamilton and Ridder for using excessive force against Plaintiff on February 4, 2018.

    **Count 4 -** Eighth Amendment claim against Terry for failing to intervene and protect Plaintiff from a known harm on February 4, 2018, after Plaintiff told Terry that he feared for his immediate safety and his life after he was assaulted by Inmate Swift and Hicks and before he was assaulted by Hamilton and Ridder.

    **Count 5 -** Eighth Amendment claim against Terry and Duane for failing to timely and adequately treat the injuries Plaintiff sustained during the assaults on February 4, 2018.

As discussed in more detail below, all claims survive preliminary review under § 1915A against those defendants who are identified above in connection with each claim. Any claims not addressed herein are considered dismissed without prejudice from this action. Likewise, claims against any individuals mentioned in the Complaint, but not identified as defendants therein, are also considered dismissed without prejudice from this action.[2] *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (defendant must be "specif[ied] in the caption").

---

[2] This includes any claims against Pickford, Banks, David, and any other non-party Plaintiff mentioned in the statement of his claim but did not identify in the case caption or list of defendants.

**Counts 1 through 4**

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII. The amendment prohibits the wanton and unnecessary infliction of pain upon prisoners and imposes a duty on officers to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). The "core requirement" of an excessive force claim under the Eighth Amendment is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). *See also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010); *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). *But see Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014) ("Even without an actual injury, the mere probability of the harm to which [an inmate is exposed] can be sufficient to create liability."). The allegations in the Complaint support claims against Hicks in Counts 1 and 2, Hamilton and Ridder in Count 3, and Terry in Count 4. No other defendants are identified in connection with these claims.

**Count 5**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may rise to the level of cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). In order to state an Eighth Amendment claim based on the denial of adequate medical care, a prisoner must show that: (1) he suffered from a serious medical need (*i.e.*, an objective standard); and (2) state officials acted with deliberate indifference to the

prisoner's medical need (*i.e.*, a subjective standard). *Farmer*, 511 U.S. at 834; *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). The allegations offered in support of Count 5 state a claim against Nurses Terry and Duane at screening. Both nurses were aware of Plaintiff's obvious injuries when they met with him on February 4, 2018, but they refused to treat Plaintiff. The following day, he was admitted to the HCU for a week of treatment by a doctor and team of nurses. Under the circumstances, Count 5 cannot be dismissed against Nurses Terry and Duane. However, the claim shall be dismissed without prejudice against all other defendants.

Although Plaintiff's claims survive preliminary review, the Court deems it necessary to address two other items mentioned in the Complaint before referring this matter. First, Plaintiff seeks to bring claims against the defendants for violations of state regulations. However, the violation of a state regulation does not give rise to a constitutional claim. *See, e.g., Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (dismissing claim that defendants did not comply with applicable state regulations); *White v. Olig*, 56 F.3d 817, 821 (7th Cir. 1995) (holding that "failure to follow procedures mandated by state but not federal law . . . can only establish a state law violation" and "are not remedial under Section 1983"). Second, Plaintiff seeks to bring criminal charges against the defendants, but Plaintiff has no right to compel a criminal prosecution in a § 1983 action. *See Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 768 (2005); *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.,* 548 F.3d 595, 597 (7th Cir. 2008). Subject to these limitations, Counts 1 through 5 shall receive further review against the defendants identified in connection with each claim.

## **Pending Motions**

Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* (Doc. 2), which shall be addressed in a separate Order of this Court.

Plaintiff filed a Motion for Recruitment of Counsel (Doc. 3), which shall be **REFERRED** to a United States Magistrate Judge for a decision.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1** and **2** are subject to further review against Defendant **HICKS**; **COUNT 3** is subject to further review against Defendants **HAMILTON** and **RIDDER**; **COUNT 4** is subject to further review against Defendant **TERRY**; and **COUNT 5** is subject to further review against Defendants **TERRY** and **DUANE**. These claims are **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

As to **COUNTS 1, 2, 3, 4,** and **5**, the Clerk of Court shall prepare for Defendants **LARRY HICKS, KENNEDY HAMILTON, C/O RIDDER, NURSE TERRY,** and **NURSE DUANE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address

shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on the Motion for Recruitment of Counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, whether or not his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 2, 2018**

                                                **s/ MICHAEL J. REAGAN**
                                                **Chief Judge**
                                                **United States District Court**