IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THEODORE BEASLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:18-CV-1193-MAB |
| ) | |
| LARRY HICKS, ) | |
| KENNEDY HAMILTON, and ) | |
| JACK RITTER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for sanctions filed by Defendants Kennedy Hamilton, Larry Hicks, and Jack Ritter (Doc. 131). Defendants ask the Court to dismiss the case as a sanction for inappropriate, derogatory, and unprofessional statements that Plaintiff made during his deposition (Doc. 131). A hearing on the motion was held on May 14, 2021, and the motion was taken under advisement (Doc. 136). The motion is now granted.

It is well recognized that "a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–50 (1991)). "Pursuant to that authority, [the court] may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez*, 845 F.3d at 776. *See also Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) (inherent authority sanctions

"remedy prejudice to a party" and "deter future parties from trampling upon the integrity of the court.").

"Although dismissal is indeed a hefty sanction, 'the most severe in the spectrum of sanctions provided by statute or rule must be available . . . to penalize those whose conduct may be deemed to warrant such a sanction . . . .'" *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). A dismissal pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process, acted in bad faith, or engaged in misconduct. *Ramirez*, 845 F.3d at 776; *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012). The court should also consider "the egregiousness of the conduct in question in relation to all aspects of the judicial process" and "whether less drastic sanctions are available." *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018) (citations omitted).

That being said, there are situations dismissal may be warranted even if the challenged conduct has no substantial impact on the course of the proceedings. *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993). And "it is axiomatic that the appropriateness of lesser sanctions need not be explored if the circumstances justify imposition of the ultimate penalty—dismissal with prejudice." *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003).

> Misconduct may exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court.

*Dotson*, 321 F.3d at 668 (citing *Barnhill*, 11 F.3d at 1368). Furthermore, as the Seventh Circuit has acknowledged on a number of occasions, monetary sanctions are an ineffective sanction against an indigent litigant who is proceeding *in forma pauperis*. *E.g., Ayoubi v. Dart*, 640 Fed. Appx. 524, 529 (7th Cir. 2016); *Hoskins v. Dart*, 633 F.3d 541, 544 (7th Cir. 2011); *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 308 (7th Cir. 2002).

Here, Plaintiff's conduct during his deposition on February 23, 2021 was, quite frankly, appalling. It is clear that he was agitated from the outset of the deposition (*see* Doc. 131-2, p. 5). He responded to simple questions in a needlessly contentious and often condescending manner (*see, e.g.,* Doc. 131-2, pp. 6–11). Before long, Plaintiff also started lobbing insults and snide rhetorical questions and comments at defense counsel (*Id.* at p. 10 ("That is the dumbest question you could possibly ask me under oath."), p. 11, ("What is wrong with you?"), p. 13 ("I would rather be anywhere else but sitting here talking to men like you."), p. 44 ("You are unprofessional man . . . ."), p. 49 ("You're a liar.")).

Plaintiff was frequently uncooperative and disruptive, responding to questions with tangential, mindless rants or obstinately refusing to answer (*e.g.,* Doc. 131-2, pp. 16–21, 30, 32, 68, 69, 78, 80, 81, 82–85, 93, 94). He repeatedly referred to other inmates and correctional officers using profanity and racial slurs (*Id.* at pp. 30–31, 48, 49, 67, 69, 70, 79). He peppered in random and inane commentary about homosexuality, which eventually became outright homophobic and derogatory remarks (*Id.* at pp. 33, 36, 46, 70, 78, 88, 90).

Halfway through the deposition, Plaintiff's attitude toward defense counsel became even more combative and aggressive, as he resorted to downright hostile overtures, profane name-calling, and outrageous accusations (Doc. 131-2, p. 49 ("I'm sick

of your behavior."), pp. 54, 63 ("Fuck you. You're a piece of shit."), 63 ("Will you not shut the fuck up and let me answer the question?"), pp. 65, 66, 73 ("[Y]ou wouldn't survive in this prison . . . I guarantee you would be a prison bitch in here."), pp. 74, 86 (suggesting defense counsel was a "child molester, a man who rapes little innocent babies"), pp. 88, 89 (accusing defense counsel of participating in a cover-up and wondering aloud if he had child pornography on his phone), pp. 90, 91 ("Men like yourself protect evil men in exchange for money. You're like a prostitute and you're worse than a prostitute. You are a male prostitute that has sex with men for money.), p. 100)). At times, his responses were even menacing. (*Id.* at p. 63 ("This man, he is irritating me to the point of no return.), p. 71 ("You are pushing my patience to an extent that no man has ever survived being in front of me. I promise you, bro. Your ignorant questions to me -- I promise you, bro.")

Plaintiff's counsel attempted to mitigate his client's conduct at the deposition with several explanations.[1] First, Plaintiff's counsel said that Plaintiff has been diagnosed with mental health issues and was not receiving his prescribed medication at the time of the deposition (Doc. 132, p. 4). However, neither Plaintiff nor his attorney provided any specifics as to Plaintiff's mental health conditions. Without any substantive information, the Court would be hard-pressed to conclude that Plaintiff's lack of medication somehow was the cause of his belligerent behavior and should excuse it.

---

[1] Counsel for Plaintiff was recruited to represent Mr. Beasley pursuant to this Court's Local Rules. *See* SDIL-LR 83.1(i), 83.9. Counsel promptly entered their appearance upon notice of their recruitment and began diligently fulfilling their pro bono obligation to represent their appointed client (*See* Docs. 116, 117, 122).

Second, Plaintiff's counsel explained that there were numerous other individuals in the room where Plaintiff was testifying from, so the usual sense of decorum for a deposition was missing and Plaintiff had a misplaced sense of informality and casualness (*Id.*). The Court appreciates that counsel is simply trying to contextualize and mitigate his client's unacceptable behavior, but the Court is not persuaded by this explanation either. Plaintiff's behavior went well beyond anything that could reasonably be characterized as "informal" or "casual." It was extraordinarily aggressive, deeply offensive, and completely uncivilized.

Finally, Plaintiff's counsel claimed that because it was a video deposition and he was not physically present with his client, he could not take recesses with his client to defuse the situation (*Id.*). Again, the Court is unmoved. To begin with, attorneys typically are not present when incarcerated litigants are deposed by video from the prison. Furthermore, Plaintiff's counsel did his best to reign his client in from afar (pp. 11–12, 43, 44–45, 63–64, 68, 69, 71, 73, 74, 76, 86, 89), but Plaintiff nevertheless continued—and even escalated—his belligerent behavior. The Court has no reason to believe that counsel's physical presence would have changed anything, other than to increase his own potential risk of harm by putting him within arm's reach of his extremely agitated and hostile client.

Simply put, no one has to be warned not to conduct themselves during a court-related procedure in the manner that Plaintiff did. His behavior is indefensible and "beyond the bounds of what a district court could be expected to indulge." *Waivio v. Bd. of Trustees of Univ. of Illinois at Chicago*, 290 Fed. Appx. 935, 937 (7th Cir. 2008). The Court

finds that Plaintiff willfully abused the judicial process, and although the sanction of dismissal is severe, it is appropriate given Plaintiff's reprehensible conduct, the obvious insufficiency of a verbal or written warning, his present inability to pay any meaningful monetary sanction, and the need to convey to Plaintiff and all other litigants (particularly those within the prison population) that abusive conduct will not be tolerated. *See Mohammed v. Anderson*, 833 Fed. Appx. 651 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1242, 208 L. Ed. 2d 631 (2021) (affirming dismissal as sanction pursuant to court's inherent authority for plaintiff's "profane," "inappropriately belligerent," "threatening," "inexplicably juvenile," "sexist and arguably homophobic," "ethnically charged," and "creepy" actions and communications toward opposing counsel and defendants); *Waivio*, 290 Fed. Appx. at 937 (affirming dismissal as sanction pursuant to court's inherent authority for plaintiff's history of delay, her inattention to the rules of the court, and her threatening and hostile conduct); *Donelson v. Hardy*, No. 14 C 1249, 2018 WL 3208490, at *8 (N.D. Ill. June 29, 2018), *aff'd*, 931 F.3d 565 (7th Cir. 2019) (dismissing pro se prisoner's case for abusive, dishonest, and obstructive conduct). To be clear, this sanction is directed at Mr. Beasley—the Plaintiff in this action and offending party—it is *not* imposed against or directed at his recruited counsel, who have done their best to represent their client.

Defendants' motion for sanctions (Doc. 131) is **GRANTED**. This case is **DISMISSED** with prejudice pursuant to the Court's inherent authority. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.

DATED: June 21, 2021

                                        **s/ Mark A. Beatty**
                                        **MARK A. BEATTY**
                                        **United States Magistrate Judge**